IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MELANIE ALFORD, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: 3:23-cv-0464-D |
| | § | |
| WONDERLAND MONTESSORI ACADEMY LLC, | § | |
| | § | |
|     Defendant. | § | |

**FIRST AMENDED ANSWER OF DEFENDANT WONDERLAND MONTESSORI ACADEMY LLC TO PLAINTIFF'S COMPLAINT**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

COMES NOW, WONDERLAND MONTESSORI ACADEMY LLC, the Defendant in the above-styled and numbered cause, and pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, files this First Amended Answer in response to Plaintiff's Complaint (Doc. 1), and would respectfully show unto the Court as follows:

**I.**

1. Defendant admits the allegations in paragraph 1.

2. Defendant admits the allegations in paragraph 2.

3. Defendant admits the allegations in paragraph 2 that Alford is a white female. Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegation that she is, at this time, a resident of Dallas County, Texas.

4. Defendant admits the allegations in paragraph 4.

5. Defendant admits the allegations in paragraph 5.

6. Defendant admits the allegations in paragraph 6.

7. Defendant admits the allegations in paragraph 7.

8. With respect to the allegations in paragraph 8, Defendant admits that Alford was promoted to Curriculum Coordinator and that this job entailed traveling to other campuses to train teachers. Defendant denies the remaining allegations in this paragraph.

9. Defendant denies the allegations in paragraph 9.

10. With respect to the allegations in paragraph 10, Defendant admits that Alford filed a charge with the Equal Employment Opportunity Commission in 2016, which was decided in Defendant's favor and did not result in a timely lawsuit. Defendant denies the remaining allegations in this paragraph.

11. Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 11.

12. With respect to the allegations in paragraph 12, Defendant admits that Kathy Jiwani was hired on July 15, 2019, as the new Head of School of Wonderland Carrollton, becoming Alford's immediate superior. Defendant also admits that Jiwani was aware of Alford's claim that she had been diagnosed with ADHD and that she recommended that Alford enroll in a certification course along with other teachers at the school. Defendant lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph.

13. With respect to the allegations in paragraph 13, Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations that Jiwani complained about Alford's performance, that Jiwani shared Alford's alleged ADHD

diagnosis with other employees, or that Alford reported Jiwani's alleged conduct to Defendant's Human Resources Generalist, Pavithra Rajendron. Defendant admits that the October 2019 performance review was critical of Alford's job performance in some areas.

14. With respect to the allegations in paragraph 13, Defendant admits that in March 2020, due to the Covid-19 pandemic, Alford was furloughed, along with most of Defendant's employees. Defendant denies the remaining allegations in this paragraph.

15. Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 15.

16. With respect to the allegations in paragraph 16, Defendant admits that in May 2020, Jiwani was the Head of Defendant's Carrollton location and that Shannon Blackwell was promoted from Director of Community Relations to Executive Director, which meant that she supervised Jiwani (who remained in her prior role) and indirectly supervised Alford. Defendant lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph.

17. With respect to the allegations in paragraph 17, Defendant admits that in May 2020, the school offered to retain Alford (who at the time was still furloughed) with the same compensation and duties if she would transfer to the Valley Ranch location, which was closer to Alford's home. Defendant denies the remaining allegations in this paragraph.

18. With respect to the allegations in paragraph 18, Defendant denies the school's request that Alford transfer to the Valley Ranch location constituted a

constructive termination of her employment. Defendant admits that Alford was subsequently terminated on August 27, 2020, after Alford failed to respond to multiple requests that she confirm whether she intended to accept the transfer. Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegation that she was replaced by an uncertified lead teacher.

19. With respect to the allegations in paragraph 19, Defendant denies, in part, Alford's allegation that in December 2020 she filed a charge with the EEOC alleging racial, national origin, and disability discrimination; though the complaint did contain assertions of discrimination based on national origin, disability, and retaliation based on disability, it did not allege discrimination based on race.

20. Defendant admits the allegations in paragraph 20.

21. Paragraph 21 contains no allegations requiring a response.

22. The allegations of paragraph 22 state a legal conclusion, to which no response is required.

23. With respect to the allegations in paragraph 23, Defendant denies, in part, Alford's allegation that she was qualified in her position as teacher while employed by the Defendant; though she was initially deemed qualified, due to poor performance, it was later deemed that she would need coaching to improve her performance, which was part of the motivation for Defendant's decision to transfer Alford to the Valley Ranch location.

24. Defendant denies the allegations in paragraph 24.

25. Defendant denies the allegations in paragraph 25.

26. Defendant denies the allegations in paragraph 26.

27. Defendant denies the allegations in paragraph 27. To the extent Alford's allegations state a legal conclusion, no response is required.

28. Defendant denies the allegations in paragraph 28 that it engaged in intentional and racially discriminatory acts and/or omissions, illegal conduct, or acted with malice or reckless disregard. The remaining allegations state a legal conclusion, to which no response is required.

29. Defendant denies the allegations in paragraph 29.

30. Paragraph 30 contains no allegations requiring a response.

31. The allegations of paragraph 31 state a legal conclusion, to which no response is required.

32. With respect to the allegations in paragraph 32, Defendant denies, in part, Alford's allegation that she was qualified in her position as teacher while employed by the Defendant; though she was initially deemed qualified, due to poor performance it was later deemed that she would need coaching to improve her performance, which was part of the motivation for Defendant's decision to transfer Alford to the Valley Ranch location.

33. Defendant denies the allegations in paragraph 33.

34. Defendant denies the allegations in paragraph 34. To the extent Alford's allegations state a legal conclusion, no response is required.

35. Defendant denies the allegations in paragraph 35.

36. Defendant denies the allegations in paragraph 36.

37. Defendant denies the allegations in paragraph 37. To the extent Alford's allegations state a legal conclusion, no response is required.

38. Defendant denies the allegations in paragraph 38 that it engaged in intentional and racially discriminatory acts and/or omissions, illegal conduct, or acted with malice or reckless disregard. The remaining allegations state a legal conclusion, to which no response is required.

39. Defendant denies the allegations in paragraph 39.

40. Paragraph 40 contains no allegations requiring a response.

41. The allegations of paragraph 41 state a legal conclusion, to which no response is required.

42. Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 42.

43. Defendant denies the allegations in paragraph 43.

44. Defendant denies the allegations in paragraph 44.

45. Defendant denies the allegations in paragraph 45.

46. Defendant denies the allegations in paragraph 46. To the extent Alford's allegations state a legal conclusion, no response is required.

47. Defendant denies the allegations in paragraph 47 that it engaged in intentional and discriminatory acts and/or omissions based on her alleged disability, illegal conduct, or acted with malice or reckless disregard. The remaining allegations state a legal conclusion, to which no response is required.

48. Defendant denies the allegations in paragraph 48.

49. Paragraph 49 contains no allegations requiring a response.

50. With respect to the allegations in paragraph 50, Defendant lacks sufficient knowledge or information to form a belief about the truth of the allegation that she reported Jiwani's allegedly discriminatory conduct to Defendant's Human Resources Generalist, Pavithra Rajendron. The allegation that this alleged reporting constituted a protected activity states a legal conclusion, to which no response is required.

51. Defendant denies the allegations in paragraph 51.

52. Defendant denies the allegations in paragraph 52. To the extent Alford's allegations state a legal conclusion, no response is required.

53. Defendant denies the allegations in paragraph 53. To the extent Alford's allegations state a legal conclusion, no response is required.

54. Defendant denies the allegations in paragraph 54 that it engaged in intentional and racially discriminatory acts and/or omissions, illegal conduct, or acted with malice or reckless disregard. The remaining allegations state a legal conclusion, to which no response is required.

55. Paragraph 55 contains no allegations requiring a response.

56. With respect to the unnumbered paragraph and headed by a "Prayer For Damages" on page 11 of the Original Complaint, and the subsequent subparts numbered paragraphs 56 through 61, these paragraphs contains no allegations requiring a response, but Defendant denies that Plaintiff is entitled to any judgment from it.

II.

57. Except to the extent set forth above, Defendant denies each and every, all and singular, the material allegations made against it in this cause, demands strict proof thereof, and of this, puts itself upon the country.

III.

58. Pleading further, Alford is not entitled to recovery based her claims of race discrimination because she failed to exhaust her administrative remedies, as required under Title VII. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id.* at 379.

59. Defendant admits that Alford filed a charge of discrimination with the EEOC on December 1, 2020, asserting that she was discriminated against based on her national origin, her disability, and in retaliation for making a claim under the ADA. However, that charge failed to check the box indicating that it alleged discrimination based on race, and the factual allegations in the charge never mentioned race. As such, this claim is not properly before this Court.

IV.

60. Pleading further, Alford is not entitled to any relief based on conduct that allegedly occurred prior to the filing of her first EEOC complaint. Alford makes several disputed allegations based on conduct that allegedly occurred between the time she was hired in 2014 as a lead teacher and the conclusion of her time as Curriculum Coordinator in 2016. (Doc. 1 at 3 ¶¶ 7-9.) However, she filed an EEOC complaint in 2016

that was ultimately decided in Defendant's favor. (Doc. 1 at 4 ¶ 10.) Alford did not sue after receiving that decision, and therefore waived review of any claims predicated on alleged conduct that occurred prior to that decision. *See Taylor*, 296 F.3d at 379 (affirming the district court's dismissal of a suit that was predicated on Title VII claims where the suit was filed more than ninety days after the appellant received the right-to-sue letter).

### V.

61.  Pleading further, Alford cannot establish a prima facie case of constructive discharge as to any of her claims. In evaluating a claim of constructive discharge, this Court must consider whether a reasonable employee would have felt compelled to leave based on the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not.

*Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918 (5th Cir. 2022) (citations and quotation marks omitted).

62.  Alford cannot show any of these factors. Though Defendant asked her to transfer to a new location closer to her home, Alford has not alleged that she was demoted, that her salary would have changed, that her responsibilities would have changed, or that she was offered any type of early retirement. In fact, she was offered the same position, at the same salary, with the same responsibilities. Alford has not alleged that she was badgered, harassed, or humiliated by the transfer offer; while

many other teachers were simply laid off, she was offered essentially the same position at another location to meet the staffing needs of the school by a supervisor at that location that was willing to work with her to help her improve her classroom performance.

63. Alford tacitly rejected this offer by failing to respond to multiple emails asking her whether she intended to teach the next year. With the school year beginning on September 8, 2020, and having still received no response from Alford just a week before the beginning of the school year, Defendant had no choice but to lay off Alford on or around September 1, 2020.

## VI.

64. Pleading further, Alford cannot establish a prima facie case of discrimination based on race or national origin. A plaintiff must present either direct evidence of discrimination or circumstantial evidence under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A prima case based on circumstantial evidence requires a showing by Alford that (1) she belongs to a protected class; (2) she was qualified for the position; (3) that she suffered an adverse employment action despite being qualified; and (4) that she was either replaced by someone not in the protected class, or that other similarly-situated employees were treated more favorably. *Id.* at 802.

65. Alford did not suffer an adverse employment action based on her race or national origin. Indeed, as shown above in paragraphs 62 and 63, she did not suffer an adverse employment action at all. She was offered a position at a new location closer to

her home that was substantially similar to her previous position, at the same pay, and with the same responsibilities, and was only terminated after she repeatedly failed to respond to inquiries about whether she was willing to take the position.

66. Alford was also not "replaced" by someone outside of her protected class. Due to reductions in enrollment in the wake of the Covid-19 pandemic, enrollment at the school had not yet returned to pre-pandemic levels in the Fall of 2020. As a result, multiple former employees were simply laid off across multiple locations and were not immediately replace. Unlike the rest of her colleagues that were laid off, Alford chose to be one of them by failing to respond to her offer of reemployment.

### VII.

67. Pleading further, Alford cannot establish a prima facie case of discrimination based on disability. To establish a claim of discrimination under the American with Disabilities Act ("ADA"), a plaintiff must present either direct evidence of discrimination or circumstantial evidence under the burden-shifting analysis discussed above in *McDonnell Douglas*. *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 483 (5th Cir. 2023). A prima case of discrimination based on circumstantial evidence requires a showing by Alford (1) that she has a disability; (2) that she was qualified for the job; and (3) that she was subject to an adverse employment decision on account of her disability. *Mueck v. La Grange Acquisitions*, L.P., 75 F.4th 469, 483 (5th Cir. 2023).

68. As an initial matter, Alford has never provided any evidence to Defendant or its relevant employees establishing that she actually suffered from ADHD, nor did

she ever request any specific accommodations based on her purported ADHD diagnosis.

69. Alford also did not suffer an adverse employment action on account of her disability. Again, as shown above in paragraphs 62 and 63, she did not suffer an adverse employment action at all. She was offered a position at a new location closer to her home that was substantially similar to her previous position, at the same pay, and with the same responsibilities, and was only terminated after she repeatedly failed to respond to inquiries about whether she was willing to take the position.

70. Even had Alford suffered an adverse employment action, she cannot show that it was motivated by her disability. Executive Director Blackwell was unaware that Alford had ever claimed to have ADHD at all prior to the transfer offer being made and therefore Alford's alleged disability could not have impacted Blackwell's decision to transfer her to the Valley Ranch location.

## VIII.

71. Pleading further, Alford cannot establish a prima facie case of discrimination based on retaliation for making a claim of discrimination under the ADA. A plaintiff must present either direct evidence of discrimination or circumstantial evidence under the burden-shifting analysis discussed above in *McDonnell Douglas*. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). A prima case of retaliation based on circumstantial evidence requires a showing by Alford (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the two. *Id.* at 348-49.

72. Alford claims that she engaged in a protected activity by reporting alleged discrimination based on her alleged ADHD by her supervisor Jiwani to Defendant's Human Resources Generalist, Pavithra Rajendron, on an unspecified date prior to October 2019. (Doc. 1 at 5 ¶ 13, 10 ¶ 50.) If true, Defendant concedes that this would constitute a protected activity. However, as shown above in paragraphs 59 and 60, Alford did not suffer an adverse employment action. She was offered a position at a new location closer to her home that was substantially similar to her previous position, at the same pay and with the same responsibilities, and was subsequently terminated only after she repeatedly failed to respond to inquiries about whether she was willing to take the position, not because of any alleged protected activity.

73. Even if Alford could show both that she engaged in a protected activity and could further show that the transfer offer constituted an adverse employment action, she could not show a casual connection between the two. As noted above in paragraph 70, Executive Director Blackwell was unaware that Alford had ever claimed to have ADHD prior to the transfer offer being made, much less that she had complained to Rajendron about any alleged discrimination based on her ADHD. Therefore, there could not have been a casual connection between the complaint and the transfer decision.

### IX.

74. Pleading further, Alford is not entitled to relief on any of her claims because Defendant had a legitimate, non-discriminatory reason for transferring Alford to the Valley Ranch location. If a plaintiff establishes a prima facie case of

discrimination—whether based on race, national origin, disability, or retaliation—the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse action. Once the defendant does so, the plaintiff must then show sufficient evidence that the proffered reason is a pretext for retaliation. *Mueck v. La Grange Acquisitions*, L.P., 75 F.4th 469, 483 (5th Cir. 2023) (evaluating this standard in the context of an ADA disability claim); *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814 (5th Cir. 2022) (stating that this standard applies to employment discrimination claims under both 42 U.S.C. § 1981 and Title VII); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348-48 (5th Cir. 2019) (evaluating this standard in the context of a retaliation claim).

75. In evaluating Defendant's staffing needs at various locations, Blackwell, as Wonderland's Executive Director, opined that Alford should not be invited to return to the Carrollton location, in part because of various deficiencies in her performance and deviations from the standards of the school.[1] However, Bigby offered to mentor Alford at the Valley Ranch location and help Alford improve her classroom performance, resulting in the direct invitation from Bigby offering Alford the position at Valley Ranch. It was, effectively, Bigby's willingness to help Alford that prevented her from being directly laid off, as many other staff members were in the wake of the Covid-19 pandemic. Therefore, even if this decision could be considered an adverse action, there

---

[1] It is irrelevant whether Blackwell's concerns about Alford's perceived weaknesses and performance deficiencies were accurate. "Even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Little v. Republic Refin. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

was a legitimate, non-discriminatory reason for it. Alford has not provided any allegations suggesting that this stated reason for her transfer was pretextual.

## X.

76. Pleading further and in the alternative, Defendant would show that it made good-faith efforts to comply with anti-discrimination laws by establishing and following anti-discrimination policies and procedures. Defendant would show that any act of discrimination or retaliation allegedly committed—which Defendant denies—was done by Defendant's managerial agent, and Defendant cannot be held vicariously liable for punitive or exemplary damages for discriminatory or retaliatory employment decisions made by managerial agents that are contrary to the employer's good-faith efforts to comply with the applicable anti-discrimination laws.

## XI.

77. Defendant denies that Plaintiff is entitled to punitive or exemplary damages. Defendant would show that any award of punitive or exemplary damages to the Plaintiff in this cause would violate the constitutional safeguards provided to this Defendant under the Constitution of the State of Texas and the Constitution of the United States of America.

## XII.

78. Pleading further, Defendant denies that Plaintiff is entitled to any recovery from it but would show that any award of compensatory and punitive damages must be limited pursuant to the provisions of Title 42, United States Code, Section 1981a(b) and Section 21.2585 of the Texas Labor Code.

### XIII.

79. Pleading further and in the alternative, Defendant would show that the cap on punitive damages set forth in Chapter 41 of the Texas Civil Practice and Remedies Code applies.

### XIV.

80. Pleading further, Defendant would show that any recovery by Plaintiff for loss of earnings, loss of earnings capacity, or loss of contributions of a pecuniary value by or on behalf of Plaintiff must be present in the form of a net loss after reduction for income tax payments or unpaid tax liability pursuant to Section 18.091(b) of the Texas Civil Practice and Remedies Code.

### XV.

81. Pleading further, to the extent that Plaintiff is entitled to any recovery of lost wages, salary, employment benefits, or other compensation allegedly denied or lost, any such recovery should be offset by whatever wages and benefits Plaintiff has earned or received subsequent to the cessation of her employment with Defendant.

### XVI.

82. Pleading further, Defendant would show that any recovery by Plaintiff of medical or mental healthcare expenses is limited to the amounts actually paid or incurred by or on behalf of the Plaintiff as mandated by Section 41.0105 of the Texas Civil Practice and Remedies Code.

### XVII.

83. Pleading further, Defendant would show that Plaintiff has failed to

mitigate her damages.

WHEREFORE, PREMISES CONSIDERED, Defendant WONDERLAND MONTESSORI ACADEMY LLC respectfully prays that, upon final trial and hearing hereof, no recovery be had from it, but that it go hence without day and recover its costs and reasonable attorney's fees, and for such other and further relief to which it may show itself to be justly entitled and will ever pray.

        Respectfully submitted,

        TOUCHSTONE, BERNAYS, JOHNSTON,
        BEALL, SMITH & STOLLENWERCK, LLP

        s/Christian P. Shippee
        Christian P. Shippee – 24033063
        christian.shippee@tbjbs.com
        Attorney-in-Charge
        Bethany H. Dow – 24078700
        bethany.dow@tbjbs.com
        COUNSEL FOR DEFENDANT
        WONDERLAND MONTESSORI ACADEMY LLC

CERTIFICATE OF SERVICE

On this 1st day of December, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

        s/Christian P. Shippee
        Christian P. Shippee