IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MELANIE ALFORD,                     §
                                    §
            Plaintiff,              §
                                    §
VS.                                 §       Civil Action No. 3:23-CV-0464-D
                                    §
WONDERLAND MONTESSORI               §
ACADEMY, LLC,                       §
                                    §
            Defendant.              §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Melanie Alford ("Alford") alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; 42 U.S.C. § 1981 ("§ 1981"); and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.001 *et seq.* (West 2023), defendant Wonderland Montessori Academy, LLC ("Wonderland") moves for summary judgment. For the reasons that follow, the court grants the motion in part and denies it in part.

I

Alford, a Caucasian who has ADHD, was employed as a teacher by Wonderland, a Montessori school. Wonderland first hired Alford as a Lead Teacher in 2014 at its McKinney location. In 2016 she was promoted to the position of curriculum coordinator. In that role, she worked with teachers at other campuses. She alleges that she was harassed by another teacher while at Wonderland's Valley Ranch location. In 2016 Alford moved to

the Carrollton location as a Lead Teacher.

When Alford started at the Carrollton location, her supervisors were Lisa Welch, the Assistant Head of School, and Mary Bonacci ("Bonacci"), the Head of School.  In August 2018 Stacy Bigby ("Bigby") became Head of School at the Carrollton location.  In May 2019 Bigby was promoted to Director of Operations, and in July 2019 Khadija "Kathy" Jiwani ("Jiwani") became Alford's supervisor as the new Head of School at the Carrollton location.

Throughout Alford's employment, Bonacci, Bigby, and Jiwani noted her tardiness. When Jiwani became Head of School, she began enforcing certain Wonderland policies and standards that Alford's previous supervisors had not enforced.  Jiwani noted that Alford's classroom was too dark, that she was the only teacher who still enforced a dress code in her classroom after Wonderland eliminated its dress code, and that Alford refused to comply with Wonderland's policy requiring teachers to communicate with parents through Tadpoles, a childcare and classroom management software that Wonderland used, and instead used her personal phone for such communications.   Both Jiwani and Shannon Blackwell ("Blackwell"), Wonderland's Director of Community Relations, noted that Alford's classroom was adult-led, rather than child-led, as is standard practice in Montessori education.

Alford alleges that, during her time at Carrollton, Jiwani, who is Indian, commented that Americans are lazy and that she "only wanted her people working for her."  P. Br. (ECF

No. 33) at 5.[1]  Alford also asserts that, on March 27, 2020, when Alford said that it would be necessary to adjust her medication because of her new schedule, Jiwani responded, "I cannot handle your ADHD and medication issues." D. Br. (ECF No. 30) at 7.

Enrollment and attendance decreased in the Dallas-Fort Worth metroplex after Wonderland received lockdown orders during the COVID pandemic in March 2020. Wonderland's executive team, which did not include Jiwani, decided to furlough the majority of staff across its campuses. On March 28, 2020 Alford received notice that she was being furloughed. The executive team then began discussing permanent layoffs. Jiwani suggested that Alford be laid off, but Alford was not included in the first round of layoffs.

During discussions about additional layoffs, the executive team discussed terminating Alford, in part because of her interactions with Jiwani and the concerns that Jiwani had raised about Alford's classroom. Bigby, then the Director of Operations, volunteered to take Alford to the Valley Ranch campus, where Bigby was transitioning to take over the role of Head of School. The team agreed, and via text message on May 21, 2020, Bigby invited Alford to go with her to Valley Ranch. On June 11, 2020 Blackwell, Wonderland's Director of Community Relations, emailed Alford telling her that Wonderland needed to know by June

---

[1]The timeframe in which these comments were allegedly made is unclear from the summary judgment record. Alford asserts in her response brief that, in October 2019, "Jiwani told Alford during a conversation that Americans are lazy" and that "[o]n . . . February 28, 2020, Jiwani made a comment that she only wanted her people working for her," P. Br. (ECF No. 33) at 5, but Alford provides no evidence for the assertions that either statement was made or that they were made on any particular date. Further, in Wonderland's brief, it cites Alford's deposition, in which she suggests that the statements were made at the same time.

16 whether she intended to accept the transfer offer.  On August 27, 2020, after receiving no response from Alford accepting the transfer offer, Wonderland terminated her employment.

Wonderland now moves for summary judgment dismissing all of Alford's claims. The court is deciding the motion on the briefs, without oral argument.

II

Wonderland moves for summary judgment on claims for which Alford will bear the initial burden of proof at trial.  When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing to the absence of evidence on any essential element of the nonmovant's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the nonmovant must go beyond her pleadings and designate specific facts to demonstrate that there is a genuine issue of material fact for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial.  *TruGreen LandCare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory where the nonmovant fails to meet this burden.  *Little*, 37 F.3d at 1076.

With respect to affirmative defenses for which Wonderland will bear the burden of proof at trial, Wonderland must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law.  *See Martin v. Alamo*

- 4 -

*Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  Because Wonderland will bear the burden of proof, it "must establish 'beyond peradventure all of the essential elements of the . . . defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

Under the local civil rules of this court, "[w]hen citing materials in the record . . . a party must support each assertion by citing each relevant page of its own or the opposing party's appendix."  N.D. Tex. Civ. R. 56.5(c).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir.2003).

## III

Wonderland maintains that Alford failed to exhaust her administrative remedies for her claim of race discrimination under Title VII.

## A

Because failure to exhaust administrative remedies under Title VII is an affirmative defense, *see Davis v. Fort Bend Cnty.*, 893 F.3d 300, 306 (5th Cir. 2018), it is Wonderland's burden to demonstrate that there is no genuine issues of material fact and that Wonderland

is entitled to summary judgment as a matter of law. *See Martin*, 353 F.3d at 412. In the instant case, the parties do not dispute that Alford failed to check the box for "race" on her Equal Employment Opportunity Commission ("EEOC") charge of discrimination. She instead checked only "national origin," "disability," and "retaliation," and her allegations on the form refer only to discrimination based on national origin, not race. D. App. (ECF No. 31) at 238-39.

Before pursuing employment discrimination claims under Title VII in federal court, plaintiffs must exhaust their administrative remedies. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Courts "interpret[] what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Courts have regularly held that, absent other indicia of race discrimination in the EEOC charge, checking only the "national origin" box, not "race" box, does not put a race discrimination claim within the scope of the investigation reasonably expected to grow out of the charge. *See, e.g., Kebiro v. Walmart*, 193 Fed. Appx. 365, 367 (5th Cir. 2006) (per curiam).[2]

---

[2]In *Kebiro* the court affirmed that the plaintiff had not exhausted administrative remedies for a race discrimination claim because he had not checked the "national origin" box, had "never mentioned anything but his age, national origin, and prior filings," and "the persons who received the positions for which [he] had applied were only mentioned in terms

- 6 -

B

Because the parties do not dispute that Alford's charge fails to mention her race and only mentions that she is American, Jiwani is described only as "of Asian descent," and the "national origin" box was checked and the "race" box was not, an investigation of race discrimination would not reasonably be expected to grow out of the charge. The court therefore grants summary judgment dismissing Alford's race discrimination claim under Title VII.

IV

The court turns next to Alford's claims of discrimination based on national origin under Title VII, race discrimination under § 1981, disability discrimination under the ADA, and her parallel claims under the TCHRA.[3]

A

Alford brings claims for national origin discrimination under Title VII and the

_____

of their age and their status as non-Kenyans," and his racial discrimination claim therefore could not have been expected to grow out of his filings with the EEOC. *Kebiro*, 193 Fed. Appx. at 367. *See also Nnadozie v. Genesis HealthCare Corp.*, 730 Fed. Appx. 151, 163 (4th Cir. 2018) ("Lastly, having checked only the 'national origin' box on her EEOC Charge, Ezeh's race-based claims under Title VII are foreclosed for failure to exhaust administrative remedies."); *Hines v. Vulcan Tools Co.*, 813 Fed. Appx. 754, 757 (3d Cir. 2020) (affirming that plaintiff did not exhaust administrative remedies with respect to his race discrimination claim because he "never raised any claim of alleged racial discrimination in his administrative filing. Nor did he ever supplement his EEOC charge with an amendment adding a claim based on race" and only checked the box for "national origin").

[3]Alford has conceded that she is not entitled to recover on her hostile work environment claims and her claim of national origin discrimination under § 1981. *See* P. Br. (ECF No. 33) at 9.

TCHRA.   Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin."  42 U.S.C. § 2000e-2.  She brings a claim of race discrimination under § 1981, which prohibits race discrimination in the making and enforcement of contracts.  *See* 42 U.S.C. § 1981.   Alford also asserts a disability discrimination claim under the ADA, which prohibits employers from discriminating against qualified individuals based on disability.  *See* 42 U.S.C. § 12112(a).  The TCHRA provides parallel protections: it is unlawful, *inter alia*, to discharge an individual, or otherwise discriminate against an individual in connection with the terms, conditions, or privileges of employment, because of race, color, disability, religion, sex, national origin, or age.  Tex. Lab. Code Ann. § 21.051 (West 2023).[4]

Because Alford relies on circumstantial evidence to support her Title VII discrimination claim, the claim is properly analyzed under the *McDonnell Douglas* burden-shifting framework.  *See Smith v. City of St. Martinville*, 575 Fed. Appx. 435, 438 (5th Cir. 2014) (per curiam).  This framework also applies to claims of race discrimination under § 1981, *see Melvin v. Barr Roofing Co.*, 806 Fed. Appx. 301, 305 (5th Cir. 2020) (per curiam);  *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016); claims of discrimination based on disability under the ADA, *see Gosby v. Apache Indus. Servs.*, 30 F.4th 523, 525-26 (5th Cir. 2022); and discrimination claims under the TCHRA, *see Reed*

---

[4]Alford does not argue a disability discrimination claim under the TCHRA.  *See* P. Br. (ECF No. 33) at 10-11.

*v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012) ("Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA.").

B

Under this framework, Alford must first establish a prima facie case of discrimination, which "creates a presumption that [Wonderland] unlawfully discriminated against" her. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination, Alford must make a prima facie showing for each claim. The prima facie showing for a claim of discrimination under Title VII requires that she produce evidence to show that

> (1) [s]he is a member of a protected class, (2) [s]he was qualified for the position at issue, (3) [s]he was the subject of an adverse employment action, and (4) [s]he was treated less favorably . . . than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (per curiam)). Similarly, to make a prima facie showing of race discrimination under § 1981, Alford must show that she

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less

> favorably than other similarly situated employees outside the
> protected group.

*Morris*, 827 F.3d at 400.   To make a prima facie showing of discrimination based on

disability under the ADA, she must show "(1) that [s]he has a disability; (2) that [s]he was

qualified for the job; [and] (3) that [s]he was subject to an adverse employment decision on

account of h[er] disability."  *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)

(third brackets in original) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847,

853 (5th Cir. 1999)).

Next, if Alford establishes a prima facie case, the burden of production shifts to

Wonderland to articulate a legitimate, nondiscriminatory reason for the employment actions

taken against Alford.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).

Wonderland's burden is one of production, not proof, and involves no credibility

assessments.  *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).

Finally, if Wonderland meets its production burden, Alford may prove intentional

discrimination by proceeding under one of two alternatives: the pretext alternative or the

mixed-motives alternative.  *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir.

2004) (age discrimination case); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th

Cir. 2011) (Title VII race discrimination case).  Under the pretext alternative, Alford must

"offer sufficient evidence to create a genuine issue of material fact . . . that [Wonderland's]

reason is not true, but is instead a pretext for discrimination[.]"  *Rachid*, 376 F.3d at 312

(citation and internal quotation marks omitted). Under the comparatively rare[5] mixed-motives alternative, she must offer sufficient evidence to create a genuine factual issue concerning whether Wonderland's "reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Alford's] protected characteristic[.]" *Id.* (citation and internal quotation marks omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

Wonderland has proffered evidence of a nondiscriminatory justification for Alford's furlough, transfer offer, and termination. According to Wonderland's proof, Alford was furloughed because of a decrease in enrollment and attendance during the COVID pandemic; she was given the offer to transfer campuses (she would have been laid off otherwise because of decreased staffing needs) because the executive team believed that other teachers were more competent, and because of her poor relationship with her supervisor; and Alford was

_____

[5]"One thing that is striking about mixed motives cases, however, is how comparatively rare they are in Title VII litigation." Paul J. Gudel, *Beyond Causation: The Interpretation of Action and the Mixed Motives Problem in Employment Discrimination Law*, 70 Tex. L. Rev. 17, 101 (1991); *see* Paul W. Mollica, *What's on the Secret Title VII Menu? Proving "Motivating Factor" and "Same Action" Under the 1991 Civil Rights Act*, 35 A.B.A. J. Lab. & Emp. L. 53 (2020) ("Even though *Desert Palace* conclusively lifted the direct-evidence requirement, it did not provide an alternative standard for triggering motivating-factor liability. Moreover, there was no sudden shift toward using motivating-factor in Title VII litigation. . . . The . . . *McDonnell Douglas* pretext method remains the default standard for Title VII discrimination cases in 2020, nearly two decades after *Desert Palace*.")

terminated because she did not respond to follow-up emails about the transfer offer and missed the deadline to respond.

The burden therefore shifts to Alford to produce evidence either that the proffered nondiscriminatory explanations were pretexts for discrimination or that discrimination was still a motivating factor in the decision.  *See Rachid*, 376 F.3d at 312.

C

The evidence of Jiwani's allegedly discriminatory statements about only wanting "her people" to work for her and her belief that Americans are lazy, as well as her alleged comments about not being able to handle Alford's ADHD, would enable a reasonable jury to find that national origin, race, and disability discrimination were motivating factors for the adverse decisions.[6]

Wonderland contends that Jiwani was not the decisionmaker behind the adverse employment actions.  But even if this turns out to be true, discrimination may still be a motivating factor if the actual decisionmakers were influenced by Jiwani's alleged discriminatory animus.  *See Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) (noting in the context of Uniformed Services Employment and Reemployment Rights Act that "if the independent investigation relies on facts provided by the biased supervisor . . . then the employer . . . will have effectively delegated the factfinding portion of the investigation to

---

[6]Alford cites no evidence to support her allegation that the statements about Americans being lazy and Jiwani wanting to work with "her people" were in fact made.  But because Wonderland cites Alford's deposition testimony about these statements, *see* D. Br. (ECF No. 30) at 5, this evidence is properly before the court.

the biased supervisor"); *Zamora v. City of Houston*, 798 F.3d 326 (5th Cir. 2015) ("[I]f an independent investigation 'takes [a supervisor's biased report] into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified,' the supervisor's action 'may remain a causal factor.'" (second alteration in original) (quoting *Staub*, 562 U.S. at 421)).

Wonderland cites Jiwani's complaints about Alford's classroom and the history of conflict between the two as part of the decision to transfer Alford. Alford's evidence of Jiwani's statements is proof of discriminatory animus that a reasonable jury could believe impacted her interactions with, and reviews of, Alford and her performance as a teacher.

Wonderland notes that the decision about whom to furlough was based in part on "observations conducted of the teacher," D. Br. (ECF No. 30) at 6, and that Wonderland's executive team "discussed Plaintiff's interactions and insubordination issues with Ms. Jiwani and the concerns Ms. Jiwani had previously raised concerning Plaintiff's classroom" before deciding to transfer her. *Id.* at 8. A jury could reasonably infer that these decisions were motivated by Jiwani's alleged discriminatory animus.

Because Alford has produced evidence that discrimination on the basis of race, national origin, and disability were motivating factors for the adverse employment actions taken against her, the court denies Wonderland's motion for summary judgment with respect to Alford's race discrimination claim under § 1981, national origin discrimination claim under Title VII, and disability discrimination claim under the ADA, and it denies Wonderland's motion with respect to Alford's race and national origin discrimination claims

under the TCHRA.[7]

V

Alford contends that she was discriminated against based on her disability under the ADA when she was denied reasonable accommodations.

A

The ADA prohibits discrimination in employment against a qualified individual on the basis of her disability. *See* 42 U.S.C. § 12112(a). Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A).

To prevail on an ADA failure-to-accommodate claim, a plaintiff must show that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (footnote and internal quotation marks omitted). "Reasonable accommodation is an element of a *prima facie* case of discrimination under the ADA, § 12111(8), and [Alford] thus bears the burden of proof of reasonableness." *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996).

_____

[7]As noted, *see supra* note 4, Alford does not argue a disability discrimination claim under the TCHRA.

B

Wonderland asserts that it did not fail to make reasonable accommodations for Alford's disability because her requested accommodation—i.e., that she remain at the Carrollton location rather than be transferred to the Valley Ranch location—was not reasonable. It points to evidence that Alford did not have a good relationship with her direct supervisor, which made her request to stay at Carrollton unreasonable.

Because in response Alford has not cited evidence that is sufficient to create a genuine issue of material fact concerning whether Wonderland failed to reasonably accommodate her disability, the court grants summary judgment dismissing Alford's failure-to-accommodate claim.[8]

VI

The court next considers Alford's retaliation claims brought under Title VII and the TCHRA.[9]

_____

[8]Alford cites only evidence that Wonderland failed to extend an offer for her to return to the Carrollton location, P. App. (ECF No. 34) at 26, but she cites no proof creating a genuine issue of material fact concerning whether her proposed accommodation was reasonable, or whether there was any available reasonable accommodation.

[9]Alford specifically alleges in her complaint that Wonderland's actions, "including, but not limited to, giving her a negative performance review in October [20]19, furloughing her in April 2020 and then terminating her employment in August 2020 were adverse and pretextual," Compl. ¶ 51, and that these actions "constituted retaliation in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 20002-2 and 2000e-2(1) and Tex. Labor Code Ann[.] §§ 21.001-21.306 (Vernon 2006)." Compl. ¶ 53. Because the complaint clearly and explicitly states that the retaliation claim is brought under Title VII and the TCHRA, Alford cannot at the summary judgment stage add claims of retaliation under the ADA or § 1981. *See Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 926 (5th Cir. 2022)

A

Title VII and the TCHRA prohibit employers from retaliating against employees who engage in a protected activity. *See* 42 U.S.C. § 2000e-3(a);[10] Tex. Lab. Code Ann. § 21.055 (West 2023).[11] Under both laws, because Alford relies on circumstantial evidence to support her retaliation claim, she must proceed under the *McDonnell Douglas* burden-shifting framework. *See Outley v. Luke & Assocs, Inc.*, 840 F.3d 219 (5th Cir. 2016) (Title VII); *Brewer v. Coll. of the Mainland*, 441 S.W.3d 723, 729 (Tex. App. 2014, no pet.) (TCHRA).

Alford must first demonstrate a prima facie case of retaliation by showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See, e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005)

---

("Neither the defendant nor the district court were required to read into the carefully stated complaint . . . a wholly different claim that was not pled.").

[10] 42 U.S.C. § 2000e–3(a) provides, in relevant part:

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*Id.* (ellipsis added).

[11] Tex. Lab. Code Ann. § 21.055 (West 2023) provides, in relevant part: "[a]n employer . . . commits an unlawful employment practice if [it] retaliates or discriminates against a person who . . . opposes a discriminatory practice . . . makes or files a charge . . . files a complaint . . . or . . . testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." *Id.* (ellipses added).

- 16 -

(Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). Alford must make this same prima facie showing for her retaliation claim brought under the TCHRA. *See Milteer v. Navarro Cnty., Tex.*, 652 F.Supp.3d 754, 765 (N.D. Tex. 2023) (Fitzwater, J.) (citing *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473-74 (5th Cir. 2006)), *rev'd on other grounds*, 99 F.4th 268 (5th Cir. 2024). As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but-for" causation that a jury must find. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing this prima facie case burden as "minimal").

If Alford establishes a prima facie case, the burden of production shifts to Wonderland to articulate a legitimate, nonretaliatory reason for the alleged retaliatory action taken. *See Walker*, 2005 WL 2278080, at *9. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at * 16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If Wonderland meets its production burden, the burden shifts back to Alford to produce evidence that would enable a reasonable jury to find that retaliation for Alford's protected conduct, rather than Wonderland's proffered legitimate, nonretaliatory reason, was the "but-for cause" of the adverse employment action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire

to retaliate was the but-for cause of the challenged employment action."); *see also, e.g.,*
*Coleman v. Jason Pharms*., 540 Fed. Appx. 302, 304 (5th Cir. 2013) (per curiam) ("An
employee establishes pretext by showing that the adverse action would not have occurred
'but for' the employer's retaliatory reason for the action." (citing *Nassar*, 133 S.Ct. at 2533-
34)).  "In order to avoid summary judgment, [Alford] must show 'a conflict in substantial
evidence' on the question of whether [Wonderland] would not have taken the action 'but for'
the protected activity."  *Coleman*, 540 Fed. Appx. at 304 (quoting *Long*, 88 F.3d at 308).

B

The court first addresses the causal connection element of the prima facie case.  To
establish a prima facie case, temporal proximity alone is only sufficient evidence of a causal
connection between protected conduct and adverse employment action when the timing is
"very close."  *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 790 (Tex.
2018); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020).  The Fifth Circuit
has noted that a five-month lapse between the protected activity and adverse action "is not
close enough, without other evidence of retaliation, to establish the 'causal connection'
element of a prima facie case of retaliation."  *Lyons*, 964 F.3d at 305 (citing *Raggs v. Miss.
Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)).

Alford alleges that she engaged in protected activity "in reporting discrimination by
Defendant's employee and supervisor Ms. Jiwani to its Human Resources Generalist shortly
before her performance review" and that Wonderland's actions in "furloughing her in April
2020 and then terminating her employment in August 2020 were adverse and pretextual."

- 18 -

Compl. ¶¶ 50-51. She then specifically alleges that this "constituted retaliation in violation of Title VII of the Civil Rights act of 1964, *as amended*, 42 U.S.C. § 2000e-3 and 2000e-2(1) and Tex. Labor Code Ann[.] §§ 21.001-21.306 (Vernon 2006)" and that she suffered damages "[a]s a direct and proximate result of the Defendant's intentional and racially discriminatory acts and/or omissions." Compl. ¶¶ 53-54. The protected activity alleged in the complaint—reporting discrimination before her October 2019 performance review—allegedly occurred more than five months before her furlough in March 2020. Because Alford cites no other evidence of retaliation, she has failed to adduce evidence of a causal connection between her complaint in October 2019 and her furlough in March 2020 or her termination in August 2020.[12] Since Alford has not provided evidence to make her prima facie case for retaliation, the court grants summary judgment dismissing Alford's retaliation claims.

\* \* \*

For the reasons explained, the court grants summary judgment in favor of Wonderland on Alford's claim of race discrimination under Title VII, her retaliation claims, and her claim of discrimination based on failure to accommodate under the ADA. The court denies Wonderland's motion for summary judgment on Alford's claims of discrimination based on national origin under Title VII and the TCHRA, discrimination based on race under § 1981

---

[12]Alford maintains that she made an informal complaint to Bigby, Wonderland's Director of Operations, about Jiwani's allegedly racially discriminatory comments, *see* P. Br. (ECF No. 33) at 17, but she cites no evidence of this complaint in her response brief, *see id.*, and, further, she has not pleaded it in her complaint. *See* Compl. ¶ 50.

and the TCHRA, and discrimination based on disability under the ADA.

       **SO ORDERED**.

       September 30, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 20 -